Vincent WALLEN, Plaintiff,

v.

Bill M. DOMM, Defendant.

Civ. A. No. 81–158–NN.

United States District Court,
E. D. Virginia,
Newport News Division.

Feb. 4, 1982.

Robert M. White, White & Selkin, Norfolk, Va., for plaintiff.

James A. Metcalfe, Asst. U. S. Atty., Norfolk, Va., for defendant.

MEMORANDUM ORDER

CLARKE, District Judge.

This matter comes before the Court on the defendant's Motion for Summary Judgment.*

I.

Plaintiff, Dr. Vincent Wallen, is the former head of psychology services at the Veterans Administration (VA) Hospital in Hampton, Virginia. Defendant, Dr. Bill Domm, is the Chief of Staff at the VA Hospital in Hampton, and he has served in that capacity since November 8, 1978. By virtue of this position, the defendant supervised plaintiff from that date until plaintiff transferred to the VA Medical Center in Montrose, New York, in September of 1981.

On August 6, 1981, plaintiff filed a Motion for Judgment in the Circuit Court of the City of Hampton, Virginia. Count One of the six-count Complaint alleged that the defendant had injured plaintiff's reputation by submitting a poor evaluation of plaintiff's work performance. Counts Two and Three alleged that defendant Domm had subjected plaintiff to the intentional infliction of mental distress. Counts Four and Five alleged that defendant's acts had caused plaintiff to feel a reasonable apprehension of physical harm. Count Six alleged that defendant's conduct had subjected plaintiff to the negligent infliction of mental distress.

The defendant responded to the Motion for Judgment on August 24, 1981, with a Petition for Removal of Civil Action. After the Court granted the petition, defendant Domm submitted the instant Motion for Summary Judgment. The motion contends that the absolute immunity of federal officials entitles defendant to judgment as a matter of law.

II.

Two Supreme Court decisions define the scope of official immunity with respect to state tort claims and constitutional claims. In *Barr v. Matteo*, the Supreme Court determined that government officials are absolutely immune from state or common-law tort liability when acting within the outer perimeter of their line of duty. *See* 360 U.S. 564, 575, 79 S.Ct. 1335, 1341, 3 L.Ed.2d 1434 (1959). In *Butz v. Economou*, the Court held that government officers enjoy only a qualified immunity when a plaintiff presents a constitutional claim. *See* 438 U.S. 478, 507, 98 S.Ct. 2894, 2911, 57 L.Ed.2d 895 (1978).

Although the Supreme Court decided *Matteo* nearly twenty years before *Butz*, the courts of appeal have agreed that the concept of absolute immunity for state and common-law tort claims survives the *Butz* decision. *See, e.g., George v. Kay*, 632 F.2d 1103, 1105–06 (4th Cir. 1980), *cert. denied*, 450 U.S. 1029, 101 S.Ct. 1738, 68 L.Ed.2d 224 (1981); *Miller v. DeLaune*, 602 F.2d 198, 199–200 (9th Cir. 1979). The Court's review of the Motion for Judgment nowhere discloses any allegation that the defendant subjected plaintiff to any constitutional deprivations. We must determine, accordingly, whether the allegedly tortious acts of defendant Domm occurred within the outer perimeter of his line of duty.

III.

1. *Performance Evaluations*

Count One of the Motion for Judgment recites that plaintiff received very high performance evaluations by Dr. Domm's predecessors in office. It states that the defendant gave plaintiff a poor evaluation in November 1980 and that the defendant prepared this poor evaluation out of personal animosity and malice toward the plaintiff. Count One further alleges that the evaluation had a defamatory meaning, that Dr. Domm disseminated this evaluation, and that this dissemination caused injury to plaintiff's career and reputation.

---

* The parties at oral argument agreed that the record was complete for decision on the motion.

■ In the view of the Court, plaintiff has plainly premised a claim of common-law libel or slander on the defendant's preparation of an unflattering performance evaluation.[1] Plaintiff has admitted in oral examination, however, that Dr. Domm had an obligation as chief of staff to prepare performance evaluations.

Q. And while you may disagree with Dr. Domm's appraisal, it was his duty to appraise you and to forward that on to central office; is that correct?

A. Essentially, yes, but not the treatment he gave me, sir. The abuse or the harassment, sir, is not part of managerial practice nowhere that I'm aware of.

Q. But the actual appraisal is something he's required to do and required to forward on?

A. Yes, sir.

*See* Deposition upon Oral Examination of Vincent Wallen (Wallen Dep.) p. 24. Accepting plaintiff's own testimony that Dr. Domm had a responsibility to prepare performance evaluations, the Court concludes that the acts giving rise to the claims in Count One fall well within the outer perimeter of the defendant's line of duty. Accordingly, we GRANT the defendant's Motion for Summary Judgment on Count One.

### 2. *Harassment and Abuse*

Counts Two, Three, and Six present claims to recover damages for physical and emotional injuries arising from Dr. Domm's negligent and intentional infliction of mental distress. Plaintiff predicates these claims for relief on alleged instances of harassment, intimidation and abuse.

Neither the Motion for Judgment nor plaintiff's deposition expressly addresses the specific grounds for relief in Counts Two, Three and Six.[2] The Court's review of plaintiff's deposition testimony nevertheless does disclose certain alleged acts of harassment and abuse.

I had angina attacks. I didn't want to have a heart attack. I had to get out from under this individual. Until three weeks, until I left [to join the VA Hospital in Montrose, New York, Dr. Domm] continued to call me into his office and abuse me and harass me. He would give me specific assignments and ask me to have them ready within a five-day period, and I would have to drop everything to get those in.

When I brought one of those assignments in he criticized that I used three sheets of paper, and this was under duress. I would have done anything to get out from under this individual. I couldn't take it any more, and the questions he asked about the counseling plan, and I said, yes, I have nine. I have Xeroxed some copies to show you what we have been doing, vocational testing. He says, "Don't you know using a Xerox machine costs money?" He was criticizing me for employing too much paper, not enough paper, or that I know a Xerox machine costs money, just to irritate me, just to harass me.

*See* Wallen Dep. p. 27. Plaintiff later related an incident arising from the death of his mother-in-law.

My wife's mother had died, and this was around 6:00 o'clock in the morning. I called to get [Dr. Domm's] permission to take annual leave to attend the funeral, and he snapped at me and said something like, who's going to cover for you while you're gone. I told him Dr. Timple.

I was rather upset over that because he didn't ask what the lady had died from, what the circumstances were, and so forth. He only wanted to know who was going to cover for me. My absence was

---

1. *See also* Letter from Robert P. Frank to Bill M. Domm (April 28, 1981) (Defendant's Exhibit E).

2. In his deposition testimony, plaintiff discusses alleged acts of malignment to support the claim in Counts Two and Three. *See* Wallen Dep. pp. 56–59. The Court believes, however, that any alleged acts of malignment arise from Dr. Domm's evaluation of plaintiff's work performance. Having determined with respect to Count One that the evaluation fell well within the outer perimeter of the defendant's line of duty, we decline to reconsider the claim with respect to Counts Two, Three and Six.

not the real problem. Dr. Timple always covered for me in my absence. He snapped at me unnecessarily when I called him at his home.

*See* Wallen Dep. p. 52.

■ In an affidavit filed with the Court on December 22, 1981, Dr. Domm stated that his duties as chief of staff included the "direction of all clinical functions within [the VA] Medical Center" and the "supervision of all services that relate directly to the care of patients." The Court believes that any comments that Dr. Domm made to plaintiff with respect to special projects or assignments, counseling plans, vocational testing, presenting reports, and providing substitute personnel clearly fall within the perimeter of Dr. Domm's line of duty. We find in the record, moreover, no affirmative allegations of harassment or abuse which would fall outside the scope of the defendant's position as chief of staff. Accordingly, the Court GRANTS the defendant's Motion for Summary Judgment as to Counts Two, Three and Six.

### 3. *Assault*

Counts Four and Five of the Motion for Judgment allege that Dr. Domm insulted, intimidated and abused plaintiff during a meeting on June 10, 1981.[3] These counts further allege that Dr. Domm's verbal acts and physical movements caused plaintiff to feel an apprehension of physical harm. These counts conclude that Dr. Domm's conduct during the meeting caused plaintiff to suffer physical and emotional harm, humiliation, and mental anguish.

Plaintiff's deposition testimony indicates that Dr. Domm requested plaintiff to stop by his office on the afternoon of June 10, 1981. Upon entering the chief of staff's office, plaintiff deposed that Dr. Domm directed him to a chair and shouted to him, "Buster, you better get in line." Wallen Dep. p. 91. Plaintiff stated that he did not understand the context of Domm's statement until Domm informed him that the comment related to a letter that Domm had received from plaintiff's attorney. *Id.* pp. 92–93. Defendant's Exhibit E shows that Attorney Robert P. Frank had written a letter to Dr. Domm apprising him of possible legal action to redress the allegedly defamatory evaluation of plaintiff's performance.

Plaintiff's deposition testimony goes on to relate that the parties discussed Domm's assessment of plaintiff's performance. Dr. Domm, according to plaintiff, insisted that plaintiff's performance was poor and that he had removed plaintiff from chairmanship of a planning board because of poor performance. *Id.* p. 93. Plaintiff responded to Domm's comments by stating that he could produce a number of competent people who could attest to his very capable work performance. *Id.*

In support of the claim that Dr. Domm had assaulted him during the meeting of June 10, plaintiff stated that he became fearful and apprehensive because Domm was "obviously angry" and "walking like a boxer." *Id.* at p. 47. Plaintiff also deposed that Domm "was spitting the words out" and blocking plaintiff's passage to the door. *Id.* pp. 96, 97–98. Although contending that he was in fear of his safety during the meeting, plaintiff concedes that Dr. Domm freely honored his request to leave the meeting. *Id.* pp. 47–48, 110.

■ Upon review of the deposition testimony and exhibits, the Court believes that the assault claims to fall within the outer perimeter of Dr. Domm's line of duty. The letter spawning the incident of June 10 related to the defendant's evaluation of plaintiff's work performance, and the parties discussed the validity of that poor evaluation during the June 10 meeting. As a chief of staff responsible for the supervision

---

**3.** The Motion for Judgment identifies July 10, 1981, as the date of the alleged assault. Plaintiff's deposition (Wallen Dep. p. 90) and Plaintiff's Exhibit 1 identify the date as June 10, 1981.

of all clinical functions and patient services, moreover, Dr. Domm had a legitimate interest in discussing a legal matter which challenged his authority.

Finding that the acts giving rise to the alleged assault fall within the outer perimeter of Dr. Domm's line of duty, the Court GRANTS the defendant's Motion for Summary Judgment as to Counts Four and Five.

## IV.

The Court is not unsympathetic to the unfairness often attendant to applications of official immunity. At least since the Supreme Court opinion in *Barr v. Matteo,* however, the judiciary has sought to promote "the fearless, vigorous, and effective administration of [government] policies" by protecting government officials from "damage suits in respect of acts done in the course of [their] duties." *See* 360 U.S. at 571, 79 S.Ct. at 1339. We note too that plaintiff did have certain administrative remedies available to challenge Dr. Domm's evaluation.[4] That plaintiff declined to pursue these administrative remedies tempers any claim of manifest injustice.

In accordance with the foregoing, the Court GRANTS the defendant's Motion for Summary Judgment and DISMISSES plaintiff's Motion for Judgment with prejudice.

---

4. *See, e.g.,* 5 U.S.C. § 4305(a) (agency, on request of employee, shall provide one impartial review of performance rating); 5 C.F.R. § 771.-302(b) (1981) (each agency shall establish grievance system which provides employees reasonable opportunity to present grievance and receive fair consideration).